## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WOODMERE ART MUSEUM, INC., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | NO. _____ |
| v. | : | |
| | : | |
| DONALD J. TRUMP, in his official capacity as | : | |
| President of the United States; | : | |
| INSTITUTE OF MUSEUM AND LIBRARY | : | |
| SERVICES; KEITH SONDERLING, in his | : | |
| official capacity as Acting Director of the | : | |
| Institute of Museum and Library Services; | : | |
| U.S. OFFICE OF MANAGEMENT AND | : | |
| BUDGET; and RUSSELL T. VOUGHT, in | : | |
| his official capacity as Director of the Office of | : | |
| Management and Budget, | : | |
| | : | |
| Defendants. | : | |

## VERIFIED COMPLAINT

Plaintiff, Woodmere Art Museum, Inc., files this Verified Complaint against Defendants, Donald J. Trump, Institute of Museum and Library Services, Keith Sonderling, U.S. Office of Management and Budget, and Russell T. Vought, and in support thereof alleges as follows:

## NATURE OF THIS ACTION

1.    Save America's Treasures ("SAT") is a Historic Preservation Fund competitive grant program administered by the National Park Service in partnership with the Institute of Museum and Library Services (IMLS) and other federal agencies. Established in 1998 to celebrate America's premier cultural resources, SAT grants recognize historic properties and collections that convey our nation's rich heritage to future generations.[1]

---

[1] https://www.nps.gov/subjects/historicpreservationfund/save-americas-Treasures-grants.htm.

2.      In September 2024, the IMLS awarded Plaintiff, Woodmere Art Museum, Inc. ("Woodmere"), located in Philadelphia, a $750,000 SAT grant, the most that could be awarded for a SAT grant, after determining that Woodmere's collection was "nationally significant." In significant reliance upon its grant, Woodmere embarked on an ambitious conservation project that would enable it to showcase its impressive collection reflecting America's extraordinary heritage in time for the America 250 celebration beginning in 2026. By its terms, Woodmere's grant was to be available for the period of October 1, 2024 through September 30, 2026.

3.      But on March 14, 2025, the President issued an Executive Order directing the IMLS to eliminate every one of its programs not mandated by statute, and to reduce its statutorily mandated functions and associated staff to the minimum required by law. Exec. Order No. 14,238, The White House *Continuing the Reduction of the Federal Bureaucracy,* § 2(a) (Mar. 14, 2025) ("Reduction EO"). The President also ordered the Office of Management and Budget to deny IMLS authorization to spend federal funds for any functions beyond the minimum required by statute. *Id.* § 2(c).

4.      The same day, the Senate passed and the President signed a continuing resolution for fiscal year 2025, which provides funding for IMLS through September 30, 2025. President Trump has directed the agency's elimination all on the same day.

5.      Two weeks later, the President issued another Executive Order, evidently intended to encourage museums to "remind Americans of our extraordinary heritage,"[2] one of the objectives of Woodmere's grant-supported project.

---

[2] Exec. Order 14253, the White House *Restoring Truth and Sanity to American History,* § 1 (Mar. 27, 2025).

6.      On April 8, 2025, the IMLS terminated Woodmere's SAT grant; by then, Woodmere had entered into numerous art conservation contracts and was aiming to complete its work by September 30, 2025 when its ability to use the grant funds expires.

7.      Woodmere has requested the IMLS to reconsider its termination of the SAT grant, in part because, for unknown reasons, the IMLS has reinstated previously terminated SAT grants in favor of two other local museums. IMLS has not responded.

8.      Woodmere brings this action to restrain the Defendants from implementing the Reduction EO as it applies to Woodmere's Save America's Treasures grant and to enjoin Defendants from denying Woodmere further access to critical grant funds.  Woodmere also requests that the Court declare that Defendants' termination of Woodmere's grant was arbitrary and capricious in violation of the Administrative Procedures Act, and that their refusal to disburse funds appropriated by Congress violates the Constitution's separation of powers, which assigns Congress the power of the purse, and the Take Care Clause, which entrusts the President with the responsibility to faithfully carry out the laws Congress enacted.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this Complaint under 28 U.S.C. § 1331, 28 U.S.C. § 1361, and 5 U.S.C. § 702.

10.      There is a controversy under 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other appropriate relief under 28 U.S.C. §§ 1361, 2201-2202, 5 U.S.C. §§ 704-706 and the Court's equitable powers.

11.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and (e)(l). Defendants are United States agencies or officers sued in their official capacities. Moreover, a substantial part of the events or omissions giving rise to this Complaint occurred and continues

to occur, and a substantial part of the property that is the subject of this action is situated, within the Eastern District of Pennsylvania.

## PARTIES

12.     Plaintiff, Woodmere, is a non-profit corporation formed under the laws of the Commonwealth of Pennsylvania in 1939 and maintains its principal place of business at 9201 Germantown Avenue, Philadelphia, PA 19118. *See* Declaration of William Valerio, Ph.D., attached as Exhibit 1, at ¶ 1.

13.     Defendant Donald J. Trump is the President of the United States. He is sued in his official capacity.

14.     Defendant Institute of Museum and Library Services is an independent federal agency. *See* 20 U.S.C. § 9102. It is an agency for the purposes of the Administrative Procedure Act.

15.     Defendant Keith E. Sonderling is the Acting Director of the Institute of Museum and Library Services and is the statutory head of IMLS. *Id.* § 9103(a)(l). In that capacity, he is responsible for implementing the Reduction EO. He is sued in his official capacity.

16.     Defendant United States Office of Management and Budget is an office in the Executive Office of the President. 31 U.S.C. § 501. It is an agency for the purposes of the Administrative Procedure Act.

17.     Defendant Russell T. Vought is the Director of the Office of Management and Budget. He is sued in his official capacity.

4

## FACTUAL ALLEGATIONS

### The IMLS

18.     The IMLS is the primary federal agency responsible for supporting the country's museums and libraries through grantmaking, research, and policy development. "The mission of IMLS is to advance, support, and empower America's museums, libraries, and related organizations through grantmaking, research, and policy development."[3] Although funding for IMLS only constitutes 0.0046% of the federal budget, IMLS provides critical resources to libraries and museums across the United States.

19.     Congress established IMLS in the Museum and Library Services Act of 1996. Pub. L. 104-208, 110 Stat. 3009 (1996). It has reauthorized and extended the Institute three times since then – most recently in a law signed by President Donald J. Trump in 2018. *See* Museum and Library Services Act of 2018 ("MLSA"), Pub. L. 115-410, 132 Stat. 5412 (2018) (codified at 20 U.S.C. §§ 9101 *et seq.*). As noted, the current reauthorization of the Institute extends through September 30, 2025.

20.     By statute, IMLS is required to have both an Office of Museum Services and an Office of Library Services. 20 U.S.C. § 9102. It is required to engage in regular research and data collection to "extend and improve the Nation's museum, library, and information services." *Id.* § 9108 (a). It is charged with supporting museums and libraries across the United States by disbursing and expending appropriated funds and providing other forms of assistance. *Id.* §§ 9121-9165 (libraries), 9171-9176 (museums).

21.     IMLS also administers a variety of competitive grant programs for libraries and museums, including the Save America's Treasures Grants, which supports "nationally significant

---

[3] https://www.imls.gov/about/learn-about-imls/our-mission-vision.

historic" projects involving art collections (including artifacts, museum collections, documents, sculptures, and other works of art). [4]

22.     Congress appropriated IMLS $294.8 million for Fiscal Year 2025.  *See Full-Year Continuing Appropriations and Extensions Act, 2025*, Pub. L. No. 119-4, § 1101(a)(5); *Further Consolidated Appropriations Act, 2024*, Pub. L. No. 118-47 div. D (2024).

23.     Upon information and belief, as of March 14, 2025, before implementation of the Reduction EO, IMLS had a staff of 77.

**IMLS Awards a Save America's Treasures Grant to Woodmere**

24.     In 2023, Woodmere applied for a SAT grant, and made the case that its collection, ranging from the 18th Century to today, and comprising 10,000 works dedicated to telling the story of Philadelphia's art and artists from generation to generation, was a collection of national significance.  Woodmere emphasized in its grant application its focus on Philadelphia artists, including works from the Revolutionary-era artists (Benjamin West, Gilbert Stuart (including several portraits of George Washington)), an extensive collection of landscapes (many documenting America's westward expansion and the newly formed National Parks), the preeminent version of Hiram Powers' *America* (a famous vision of America as a pure ideal worthy of veneration and protection from secession), and a bust of Abraham Lincoln sculpted from life by Sarah Fisher Ames. Ex. A at ¶ 6.

25.     Woodmere applied for a SAT grant to fund a project that ultimately would remind visitors to Woodmere of America's extraordinary heritage by displaying and making accessible its collection in a manner that will reflect the richness of American history.  The project specifications and work details necessary to achieve the project's goals include ways to establish

---

[4] Institute of Museum and Library Services, Grant Programs, https://www.imls.gov/grants/available/save-americas-Treasures (last visited August 18, 2025).

and configure new storage spaces to relieve collection overcrowding as well as implement updated storage practices. The project supported by the SAT grant would also make it possible for staff to update Woodmere's cataloguing system and move, catalogue, and digitize works in the collection. Woodmere planned to showcase its collection of works by Philadelphia artists for use in future exhibitions, most immediately its "America 250" celebration to be titled "the Arc of Promise," beginning in 2026. *Id.* at ¶ 7.

26.     On September 10, 2024, the IMLS notified Woodmere that it been selected to receive an SAT award from the IMLS. Among the comments from the grant application reviewers were these statements: "Woodmere Art Museum's Collection reflect a rich history of Philadelphia from its early moments as the Nation's first capital until now," and "it stands to reason that [Woodmere] would house many significant works representing critical events in our nation's history." *Id.* at ¶ 8.

27.     The IMLS awarded Woodmere $750,000 – the most that could be awarded for a single SAT grant - that, once matched by private funds, enabled Woodmere to sign contracts for art conservation projects, many with local craftspeople – often independent contractors who have small businesses or are self-employed. *Id.* at ¶ 9.

28.     SAT grants are reimbursed quarterly, and by December 2024, Woodmere had incurred $16,416 in grant expenditures that IMLS reimbursed on March 24, 2025. Since then, in reliance upon that grant reimbursement, and others it expected to receive, Woodmere has entered into more contracts to complete the project. To date, Woodmere has received IMSL reimbursement of $195,002 for expenses incurred on the project from October 1, 2024 through May 9, 2025. *Id.* at ¶ 11.

## The Reduction Executive Order

29.    The Reduction Executive Order, without providing any reasoned explanation, and contrary to the will of Congress as expressed in the MLSA, asserts that the IMLS is "unnecessary." Reduction EO § 1. The Executive Order directs IMLS and other covered agencies to "reduce the performance of their statutory functions and associated personnel to the minimum presence and function required by law." *Id.* § 2(a).

30.    On March 31, 2025, the Director of Human Resources for IMLS informed agency staff that the entirety of IMLS would be placed on leave and that all grants would be terminated. The Director advised that staff should expect a reduction in force within 30 days. *See State of Rhode Island v. Trump*, No. 1:25-cv-128 JJM-LDA, 2025 WL1303868, at *3 (D.R.I. May 6, 2025). As observed by the *Rhode Island* court, the agency informed its employees that the agency would be stripped "down to the studs." *Id.* at *3

31.    Upon information and belief, as of April 1, 2025, IMLS recalled a skeleton crew of approximately 12 staff members, including one deputy director for museums, and one program director for museums. *Id.*

32.    Because the remainder of IMLS staff have been placed on administrative leave, IMLS is not capable of servicing existing grants, and it has begun terminating existing grants, such as Woodmere's. *Id.*

33.    To ensure its implementation, the Reduction EO directs the Office of Management and Budget (OMB) and its Director, Russell Vought, to "reject funding requests" by the IMLS "to the extent they are inconsistent with this order." Reduction EO § 2(c).

34.    OMB's oversight of the decisions resulting from the Executive Order precludes the possibility the agency will make up for its dramatic cuts with increases elsewhere and makes

it certain that the Administration will fail to spend the full amount of funding appropriated by Congress.

35.    OMB's involvement also underscores that the purpose of the agency's planned reduction in force is to "[e]liminat[e] non-statutorily mandated functions," as Director Vought previously ordered in his February 26, 2025 Memorandum to Heads of Executive Departments and Agencies [Memo. at 3], and as the Executive Order now commands. Reduction EO § 2(a).

**IMLS's Termination of Woodmere's Save America's Treasures Grant**

36.    On April 8, 2025, the Acting Director of the IMLS, carrying out the directives of the Reduction EO, advised Woodmere that its Save America's Treasures grant is "no longer consistent with the agency's priorities and no longer serves the interests of the United States and the IMLS Program," adding that the grant was being terminated "in its entirety" effective immediately. Ex. at ¶ 13.

37.    The termination of Woodmere's Save America's Treasures grant by Defendant Sonderling abruptly interrupted Woodmere's grant project, part of which was intended to support its "America 250" exhibition in 2026. *Id.* at ¶ 14.

38.    On May 8, 2025, Woodmere requested that defendant Sonderling review the termination of its Save America's Treasures grant. *Id.* at ¶ 17.

39.    Woodmere is relying upon its Save America's Treasures grant to carry out a project to stabilize and conserve works in their collection by Philadelphia artists. Woodmere's project ultimately would remind visitors to Woodmere of America's extraordinary heritage by displaying and making accessible its collection in a manner that will reflect the richness of American history. *Id.* at ¶ 18.

40.     Woodmere planned to use the SAT grant to showcase its collection of Philadelphia artists for use in future exhibitions, most immediately the "America 250" celebration beginning in 2026. *Id.* at ¶ 19.

41.     As the Cradle of Liberty, Philadelphia will attract countless visitors to celebrate America's Semi-quincentennial. Woodmere's grant is critical to its ability to complete and share its "Arc of Promise" collection next year with visitors from across the country and around the world the story of artists living and working in America's birthplace during the America 250 celebration next year.  *Id.* at ¶ 20.

42.     To make full use of its Save America's Treasures grant, Woodmere was required to raise funds to match all funds it anticipated receiving from the IMLS.  In reliance upon receiving the grant, therefore, Woodmere solicited and raised an additional $750,000 from private donors who made their donations with the expectation that Woodmere would receive all of its grant money. *Id.* at ¶ 9.

43.     In significant reliance upon receiving its SAT grant, Woodmere entered into more contracts with local craftspeople to achieve completion of its collection conservation project in time for, among other exhibitions, the "America 250" celebration in 2026.  *Id.* at ¶¶ 10, 11.

44.     By the time Woodmere received the notification of its grant termination, Woodmere had entered into numerous contracts to ensure that it would achieve its project goals and make full use of the grant proceeds by September 30, 2026, when the grant was to be expire by its terms.  *Id.* at ¶ 15. But with the imminent possible elimination of IMLS by September 30, 2025, Woodmere will need to maximize its SAT grant funds by September 30, 2025.

45.     Although Woodmere anticipated that change might be coming to IMLS as a result of the Reduction EO, it did not expect those changes would affect Woodmere's grant. Rather, it

thought those changes might have an impact on *future* grants, *not* a grant that Woodmere had applied for in the past, a grant that it was awarded, and a grant it relied upon to solicit matching contributions and relied upon to enter into contracts to fulfill the project. The IMLS's letter caught Woodmere in midair, and it has been scrambling ever since to keep our SAT project alive. *Id.* at ¶ 16.

46.     Therefore, on May 8, 2025, Woodmere's Director and CEO, William Valerio, wrote to Mr. Sonderling, the Acting Director of the IMLS, and requested that he review and reconsider Woodmere's SAT grant termination.  Woodmere has not received a response to this request, as well as follow up requests. *Id.* at ¶17.

47.     Woodmere is aware that other Philadelphia area museums, similar to Woodmere, have had their previously terminated SAT grants restored, with no apparent reason why they received favorable treatment and Woodmere has not.  IMLS's decision to rescind its prior termination of those two grants is because, as reported in the Philadelphia *Inquirer*, the IMLS "determined that [their] grant is consistent with the agency's priorities in furtherance of the President's agenda."[5]  While that statement may be accurate, it cannot be reconciled with IMLS's decision to terminate Woodmere's grant because its "nationally significant" collection of "America's Treasures" is *also* consistent with the President's agenda, namely, to promote America's heritage. *Id.* at ¶ 21.

48.     Therefore, believing that Woodmere might be next to be informed its SAT grant was reinstated - in part because the IMLS had recognized that Woodmere's collection reflected ideals that were consistent with the President's desire to encourage collections that exemplified America's extraordinary heritage - since May, Woodmere has made discreet inquiries with

---

[5] https://www.inquirer.com/news/philadelphia/grants-funding-philadelphia-doge-cuts-trump-agenda-20250502.html?query=IMLS

government officials to determine whether and when Woodmere may receive the good news that it, too, will have its SAT grant restored. *Id.* at ¶ 23.

49.     Woodmere has explored all reasonable, non-litigious means to have its grant restored. But at this point, with the grant project in jeopardy due to the pause in its funds, the expiration of the grant funding on September 30, 2025, and a serious need to complete its project in time to exhibit its nationally significant collection in time for the America 250 celebration, Woodmere has no choice but to take this action seeking relief for actions by Defendants that it believes to be unlawful. *Id.* at ¶ 24.

50.     The combined effect of the IMLS's termination of Woodmere's grant, the OMB's directive to reject further funding requests, the imminent elimination of IMLS on September 30, 2025, the failure of IMLS to respond to Woodmere's request for reconsideration of its grant termination, and the arbitrary and irrational refusal to reinstate Woodmere's grant while reinstating grants for similarly situated local museums, despite its intention to use its SAT grant in furtherance of the President's agenda, presents an imminent threat that Woodmere will suffer irreparable harm.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the Appropriations Clause
### (Against all Defendants)

51.     Woodmere incorporates by reference the allegations contained in the preceding paragraphs.

52.     Federal courts possess the power in equity to grant injunctive relief "with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015). "[T]he President's actions may ... be reviewed for constitutionality."

*Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992). Plaintiff States are "entitled to invoke the

equitable jurisdiction to restrain enforcement" of unconstitutional acts by federal officials,

including "executive orders." *Panama Ref Co. v. Ryan*, 293 U.S. 388,414 (1935).

53.    The Appropriations Clause provides that "[n]o Money shall be drawn from the

Treasury, but in Consequence of Appropriations made by Law." U.S. Const. Art. I, § 9, cl. 7. The

Appropriations Clause is a "straightforward and explicit command" that "no money can be paid

out of the Treasury unless it has been appropriated by an act of Congress." *Office of Pers. Mgmt.*

*v. Richmond*, 496 U.S. 414, 424 (1990) (quoting *Cincinnati Soap Co. v. United States*, 301 U.S.

308, 321 (1937)). *See Rhode Island* at *13 ("The Constitution's Appropriations Clause . . . grants

"Congress 'exclusive power' over federal spending.") (citations omitted).

54.    Here, Congress has expressly directed that funds be expended for the operations

of agencies that it has created. Defendants' unilateral executive action to decline to expend

appropriated funds therefore infringes on Congress's appropriations power and is

unconstitutional.

55.    This Court is authorized to enjoin any action by the Executive and his agencies

that "is unauthorized by statute, exceeds the scope of constitutional authority, or is pursuant to

unconstitutional enactment." *Youngstown Sheet & Tube Co. v. Sawyer*, 103 F. Supp. 569 (D.D.C.

1952), *aff'd*, 343 U.S. 579 (1952).

56.    Pursuant to 28 U.S.C. § 2201, Woodmere is also entitled to a declaration that the

Executive Order and the Defendants' decisions carrying out the directives of the EO violate the

Appropriations Clause.

## COUNT II
### Violation of Separation of Powers – Usurping Legislative Authority
### (Against all Defendants)

57.     Woodmere incorporates by reference the allegations contained in the preceding paragraphs.

58.     The separation of powers doctrine is "foundational" and "evident from the Constitution's vesting of certain powers in certain bodies." *Seila L. LLC v. CFPB*, 591 U.S. 197, 227 (2020); *see also Trump v. United States*, 603 U.S. 593, 637-38 (2024).

59.     Article I, Section 1 of the United States Constitution enumerates that: "[a]ll legislative Powers herein granted shall be vested in ... Congress." U.S. Const. art. I, § 1. The Constitution also "exclusively grants the power of the purse to Congress, not the President." *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018).

60.     The Executive's powers are limited to those specifically conferred by "an act of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). The Executive has no power "to enact, to amend, or to repeal statutes." *Clinton v. City of New York*, 524 U.S. 417,438 (1998). And "settled, bedrock principles of constitutional law" require the Executive to expend the funds that Congress duly authorizes and appropriates. *In re Aiken County*, 725 F.3d 255, 259 (D.C. Cir. 2013) (Kavanaugh, J.).

61.     Given these principles, where the Executive Branch overrides a statute or the legislative intent of Congress, it violates the separation of powers doctrine.

62.     Here, where Congress has created the IMLS and the programs it administers, the Executive cannot do away with the agency or effectively incapacitate its ability to administer appropriated grants or carry out statutorily assigned duties. The actions challenged herein thus violate Constitutional and statutory mandates, contravene Congressional intent, and are unlawful.

63.     This Court is authorized to enjoin any action by the Executive and his agencies that "is unauthorized by statute, exceeds the scope of constitutional authority, or is pursuant to unconstitutional enactment." *Youngstown Sheet & Tube Co.*, 103 F. Supp. at 576, *aff'd*, 343 U.S. 579.

64.     Woodmere is entitled to preliminary and permanent injunctive relief barring the actions challenged herein.

65.     Pursuant to 28 U.S.C. § 2201, Woodmere is also entitled to a declaration that the actions challenged herein violate the constitutional separation of powers doctrine, and impermissibly arrogate to the Executive power that is reserved to Congress.

## COUNT III
### Violation of Take Care Clause
### (Against All Defendants)

66.     Woodmere incorporates by reference the allegations contained in the preceding paragraphs.

67.     The Take Care Clause provides that the Executive must "take Care that the Laws be faithfully executed." U.S. Const. art. II,§ 3; *Util. Air Reg. Grp. v. EPA,* 573 U.S. 302, 327 (2014) ("Under our system of government, Congress makes the laws and the President ... faithfully executes them") (internal quotation marks and citation omitted). *Rhode Island* at *14.

68.     The Executive violates the Take Care Clause where it overrides statutes enacted by Congress and signed into law or duly promulgated regulations implementing such statutes. *See In re United Mine Workers of Am. Int'l Union,* 190 F.3d 545, 551 (D.C. Cir. 1999) (holding that "the President is without authority to set aside congressional legislation by executive order"); *Kendall v. United States,* 37 U.S. (12 Pet.) 524,613 (1838) (rejecting argument that by

charging the President with faithful execution of the laws, the Take Care clause "implies a power to forbid their execution").

69.    By dismantling the IMLS and the programs it administers, which are creatures of Congress, the Executive has failed to faithfully execute the laws enacted by Congress in violation of the Take Care Clause.

70.    This Court is authorized to enjoin any action by the Executive and his agencies that "is unauthorized by statute, exceeds the scope of constitutional authority, or is pursuant to unconstitutional enactment." *Youngstown Sheet & Tube Co.,* 103 F. Supp. at 576, *aff'd,* 343 U.S. 579.

71.    Woodmere is entitled to preliminary and permanent injunctive relief barring the actions challenged herein.

72.    Pursuant to 28 U.S.C. § 2201, Woodmere is also entitled to a declaration that the actions challenged herein violate the Take Care Clause.

## COUNT IV
### Violation of Administrative Procedure Act
### Arbitrary and Capricious and Abuse of Discretion
### (Against Defendant IMLS)

73.    Woodmere incorporates by reference the allegations contained in the preceding paragraphs.

74.    Defendant IMLS is an "agency" under the Administrative Procedure Act (APA). 5 U.S.C. §§ 551(1), 701.

75.    Defendant IMLS took final agency actions that are subject to judicial review when it made decisions to implement the Executive Order and substantially curtail its operations.

76.     The APA requires courts to "hold unlawful and set aside" agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2).

77.     An agency action is arbitrary or capricious where the agency fails to "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

78.     When an agency "rescinds a prior policy," the agency must, at minimum, "consider the 'alternatives' that are within the ambit of the existing policy," "assess whether there were reliance interests," and "weigh any such interests against competing policy concerns." *Dep't of Homeland Sec. v. Regents*, 591 U.S. 1, 30, 33 (2020).

79.     A court "may uphold agency action only on the grounds that the agency invoked when it took the action." *Michigan v. EPA*, 576 U.S. 743, 758 (2015) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

80.     An action is also arbitrary and capricious if the agency "failed to consider ... important aspect[s] of the problem" before it did or did not take into account "legitimate reliance interests." *Regents*, 591 U.S. at 25 (quoting *State Farm*, 463 U.S. at 43).

81.     Defendant IMLS provided no explanation, let alone a reasoned explanation, for its decision to dismantle the IMLS and terminate Woodmere's Save America's Treasures grant.

82.     Similarly, defendant IMLS provided no reasoned explanation for its decision to ignore Woodmere's request that IMLS reinstate Woodmere's Save America's Treasures grant, while deciding, again with no known explanation, to restore similar grants to two other local museums, the Atwater Kent Museum and Historic Germantown.

83.     Defendant IMLS failed to consider the legitimate reliance interests of grantees (such as Woodmere), the public, and other interested entities on the functions, programs, and offices that have been reduced or eliminated.

84.     Defendant IMLS failed to consider reasonable alternatives to the elimination or reduction of its functions, programs, and offices.

85.     Defendant IMLS failed to weigh the purported benefits of eliminating its functions and programs against the costs.

86.     The IMLS's decision to terminate its grants on its face reflects an arbitrary and capricious action by failing to engage in reasoned analysis, assess alternatives, consider reliance, or do anything but eliminate its discretionary programs and minimize its remaining operations in blind adherence to the Executive Order.

87.     Pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, Woodmere is entitled to a declaration that the IMLS's decision to implement the Executive Order violates the APA.

88.     Woodmere is also entitled to vacatur of the IMLS's implementation of the Executive Order, specifically its termination of Woodward's Save America's Treasures grant, and a preliminary and permanent injunction preventing defendant IMLS and OMB from enforcing or further implementing the Executive Order.

### COUNT V
**Violation of the Administrative Procedure Act, § 706(1)**
**(Against Defendants Sonderling and IMLS)**

89.     Woodmere incorporates by reference the allegations contained in the preceding paragraphs.

90.     Under the APA, a court "shall" "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

91.    The MLSA imposes mandatory duties on the Director of IMLS to disburse various grants. Additionally, Congress appropriated funds for IMLS to expend for this purpose. *See* 2024 Appropriations Act, 138 Stat. at 697; 2025 Appropriations Act, 139 Stat. at 10-12. Defendants have non-discretionary duties to issue grants and to disburse funds appropriated for that purpose.

92.    The Court therefore should compel defendant IMLS to issue the grants it is statutorily required to issue and to disburse the funds Congress appropriated for that purpose.

## COUNT VI
### Equitable Ultra Vires
### (Against All Defendants)

93.    Woodmere incorporates by reference the allegations contained in the preceding paragraphs.

94.    Neither the President nor an agency can take any action that exceeds the scope of their constitutional or statutory authority.

95.    Federal courts possess the power in equity to grant injunctive relief "with respect to violations of federal law by federal officials." *Armstrong*, 575 U.S. at 326-27. Indeed, the Supreme Court has repeatedly allowed equitable relief against federal officials who act "beyond th[e] limitations" imposed by federal statute. *Larson v. Domestic & Foreign Com Corp.*, 337 U.S. 682, 689 (1949).

96.    The actions challenged herein are contrary to law and outside of Defendants' authority because Defendants cannot dismantle a federal agency and terminate an agency's programs by eliminating the staff and resources the agency requires to meet its statutory obligations.

97.     Woodmere is entitled to preliminary and permanent injunctive relief barring the actions challenged herein.

98.     Pursuant to 28 U.S.C. § 2201, Woodmere is also entitled to a declaration that the actions challenged herein are contrary to law and outside of Defendants' authority.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court:

i.     Declare that the Executive Order and the IMLS's decisions to implement it are unlawful or unconstitutional because they violate the APA and the United States Constitution;

ii.     Pursuant to 5 U.S.C. § 705, postpone the effective date of the IMLS's decision to terminate Woodmere's Save America's Treasures grant;

iii.     Pursuant to 5 U.S.C. § 706, vacate the IMLS's decision to terminate Woodmere's Save America's Treasures grant;

iv.     Preliminarily and permanently enjoin the IMLS and OMB from implementing the Executive Order, the IMLS's decision to terminate Woodmere's Save America's Treasures grant, and the OMB's rejection of any request to reinstate Woodmere's grant funds;

v.     Award Woodmere its reasonable fees, costs, and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 2412; and

vi.     Grant other such relief as this Court may deem proper.

Respectfully submitted,

John P. McShea (Pa. I.D. No. 34562)
Ralph J. Kelly (Pa. I.D. No. 35468)
Donna Brennan-Scott (Pa. I.D. No. 89275)
Eastburn and Gray, PC
60 East Court Street
Doylestown, PA  18901
215-345-7000
jmcshea3@eastburngray.com
rkelly@eastburngray.com
dscott@eastburngray.com

## **VERIFICATION**

I , William Valerio, Ph. D., Director and Chief Executive Officer of Woodmere Art Museum, Inc., hereby verify that the facts set forth in the foregoing Verified Complaint are true and correct, based on my personal knowledge, information and belief.


*William R. Valerio*

_____
William Valerio, Ph. D.

Dated: August 29, 2025

# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WOODMERE ART MUSEUM, INC., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | NO. _____ |
| v. | : | |
| | : | |
| DONALD J. TRUMP, in his official capacity as | : | |
| President of the United States; | : | |
| INSTITUTE OF MUSEUM AND LIBRARY | : | |
| SERVICES; KEITH SONDERLING, in his | : | |
| official capacity as Acting Director of the | : | |
| Institute of Museum and Library Services; | : | |
| U.S. OFFICE OF MANAGEMENT AND | : | |
| BUDGET; and RUSSELL T. VOUGHT, in | : | |
| his official capacity as Director of the Office of | : | |
| Management and Budget, | : | |
| | : | |
| Defendants. | : | |

## DECLARATION OF WILLIAM VALERIO, Ph.D.

I, William Valerio, Ph.D., declare the following:

1.      I am over the age of 18, and I am competent to testify to the matters set forth below.  The following statements in this Declaration are based upon my personal knowledge unless otherwise noted.

2.      Since 2010, I have served as Director and Chief Executive Officer of Woodmere Art Museum, Inc., a non-profit corporation ("Woodmere") located at 9201 Germantown Avenue, Philadelphia, PA 19118. Before assuming my position at Woodmere, I was the Assistant Director for Administration at the Philadelphia Museum of Art.

3.      Since 1999, the National Park Service, in partnership with the Institute of Museum and Library Services ("IMLS"), the National Endowment for the Humanities, and the

National Endowment for the Arts, has provided matching grants to support preservation of nationally significant historic properties and collections through the "Save America's Treasures" program.

4.     According to the IMLS, Save America's Treasures had provided more than $355 million to more than 1,300 projects by 2022 to provide preservation and conservation work on "nationally significant" collections, artifacts, structures and sites in order to preserve American history for future generations.  Further, by requiring a dollar-for-dollar private match, these grants have leveraged more than $500 million in private investment and contributed more than 16,000 jobs to local and state economies as of 2022.

5.     Save America's Treasures ("SAT") grants are awarded through a competitive process.  Significantly, individual projects are only eligible for one SAT grant. For a museum to be considered for this funding, it must demonstrate its collection's national significance. Funding for the SAT awards is appropriated by Congress, but the awards are managed by the IMLS.

6.     In 2023, Woodmere applied for a SAT grant, and made the case that its collection, ranging from the 18th Century to today, and comprising 10,000 works dedicated to telling the story of Philadelphia's art and artists from generation to generation, was a collection of national significance.  Woodmere emphasized in its grant application its focus on Philadelphia artists, including works from the Revolutionary-era artists (Benjamin West, Gilbert Stuart (including several portraits of George Washington), an extensive collection of landscapes (many documenting the newly formed National Parks), the preeminent version of Hiram Powers' *America* (a famous vision of America as a pure ideal worthy of veneration and protection from secession), and a bust of Abraham Lincoln sculpted from life by Sarah Fisher Ames.

7.      Woodmere applied for a SAT grant to fund a project that ultimately would remind visitors to Woodmere of America's extraordinary heritage by displaying and making accessible its collection in a manner that will reflect the richness of American history.  The project specifications and work details necessary to achieve the project's goals include ways to establish and configure new storage spaces to relieve collection overcrowding as well as implement updated storage practices.  The project supported by the SAT grant would also make it possible for staff to update Woodmere's cataloguing system and move, catalogue, and digitize works in the collection.  Woodmere planned to showcase its collection of works by Philadelphia artists for use in future exhibitions, most immediately the "America 250" celebration beginning in 2026.

8.      On September10, 2024, the IMLS notified Woodmere that it been selected to receive an SAT award from the IMLS.  *See* 9/10/24 email, M. Feitl to L. Heemer, copy attached as Exhibit A.  The stated "award period" ran from October 1, 2024 to September 30, 2026.  *See* Official Award Notification, copy attached as Exhibit B.  Among the comments from the grant application reviewers were these statements: "Woodmere Art Museum's Collection reflect a rich history of Philadelphia from its early moments as the Nation's first capital until now," and "it stands to reason that [Woodmere] would house many significant works representing critical events in our nation's history." *See* Grant Reviewers' Comments, copy attached as Exhibit C.

9.      The IMLS awarded Woodmere $750,000 – the most that could be awarded by IMLS for a Save America's Treasures grant – that required that Woodward raise another $750,000 in matching funds.  In reliance on receiving the $750,000 grant, Woodward successfully elicited, and expecting the project to advance patrons donated, the required matching funds.

10.     In further reliance on IMLS's commitment, and knowing it had the additional private funds, Woodmere signed contracts for art conservation work related to the project, many with local professionals, often independent contractors who have small businesses or are self-employed.

11.     SAT grants are reimbursed quarterly, and by December 2024 Woodmere had incurred $16,416 in grant expenditures that IMLS reimbursed Woodmere for on March 24, 2025. In reliance upon that grant reimbursement, and others it expected to receive, Woodmere has entered into more contracts to complete the project. To date, Woodmere has received IMSL reimbursement of $195,002 for expenses incurred on the project from October 1, 2024 through May 9, 2025.

12.     On March 14, 2025, the President issued Executive Order 14238, entitled "Continuing the Reduction of the Federal Bureaucracy," directing the IMLS to eliminate every one of its programs not mandated by statute and to reduce its functions and staffing to the minimum required by law.   The President also ordered the Office of Management and Budget to deny the IMLS and other agencies affected by the Executive Order authorization to spend federal funds for any functions beyond the statutory minimum. According to one federal court, shortly after the issuance of the "Reduction" Executive Order, the IMLS held an agency-wide town hall in which they informed the employees that they anticipated the agency would be stripped "down to the studs."

13.     On April 8, 2025, the Acting Director of the IMLS informed Woodmere that its SAT grant was being terminated "in its entirety," effective immediately, with no explanation other than a statement that the SAT grant "is no longer consistent with the agency's priorities and

4

no longer serves the interest of the United States." *See* 4/8/25 email, K. Sonderling to L. Heemer. L. Williams and W. Valerio, copy attached as Exhibit D.

14.     The termination of Woodmere's Save America's Treasures grant by IMLS abruptly interrupted Woodmere's grant project, part of which was intended to support its "America 250" exhibition in 2026.

15.     By the time Woodmere received the notification of its grant termination, Woodmere had entered into numerous contracts to ensure that it would achieve its project goals and make full use of the grant proceeds by September 30, 2026, when the grant was to be expire by its terms.  We then learned that the IMLS had been reauthorized only through September 30, 2025 and that President Trump wants to eliminate IMLS on that date.

16.     Although we anticipated that change might be coming to IMLS as a result of the Executive Order, we did not expect those changes would affect Woodmere's grant. Rather, we thought those changes might have an impact on *future* grants, *not* a grant that Woodmere had applied for in the past, a grant that we were awarded, and a grant we relied upon to solicit matching contributions and relied upon to enter into contracts to fulfill the project. The IMLS's letter "caught us in midair," and we've been scrambling ever since to keep our SAT project alive.

17.     Faced with the confusion and uncertainty created by the termination of Woodmere's SAT grant, on May 8, 2025, I therefore wrote to Mr. Sonderling, the Acting Director of the IMLS, and requested that he review and reconsider Woodmere's SAT grant termination. Woodmere has not received a response to this request, as well as three follow up requests. *See* 5/8/25 letter, W. Valerio to K. Sonderling, and emails dated 5/9/25, 7/17/25 and 8/7/25 from L. Williams to IMLS, copies attached as Exhibit E.

5

18.     Woodmere is relying upon its Save America's Treasures grant to carry out a project to stabilize and conserve works in its collection by Philadelphia artists. Woodmere's project ultimately will remind visitors to Woodmere of America's extraordinary heritage by displaying and making accessible its collection in a manner that will reflect the richness of American history.

19.     Woodmere planned to use its SAT grant to help showcase its collection of Philadelphia artists for use in future exhibitions, most immediately the America 250 celebration beginning in 2026.

20.     As the Cradle of Liberty, Philadelphia will attract countless visitors to celebrate America's Semi-quincentennial. Woodmere's grant is critical to its ability to complete and proudly share its "Arc of Promise" exhibition next year with visitors from across the country and around the world the story of artists living and working in America's birthplace during the America 250 events next year.

21.     Since receiving IMLS's termination notice, I have learned that two other Philadelphia area museums – the Atwater Kent and Historic Germantown museums - whose SAT grants were terminated along with Woodmere's have had their SAT grants restored, with no apparent reason why they received favorable treatment, and Woodmere has not, other than what I have read that IMLS rescinded its termination of the other grants, and reinstated them, because IMLS had determined that the reinstated grants are now "consistent with the agency's priorities and in furtherance of the President's agenda."

22.     But knowing that IMLS had judged Woodmere to own a "nationally significant" collection, and how Woodmere's planned "Arc of Promise" exhibition for America 250 will emphasize America's heritage, I cannot reconcile IMLS's random decision to reinstate two grants

that further the Administration's agenda and not reinstate Woodmere's grant given that, by the same reasoning, it also furthers the agenda.

23.     Therefore, believing that Woodmere would also have its grant reinstated - in part because the IMLS had recognized Woodmere's collection reflected ideals that were consistent with the President's desire to recognize collections that exemplified America's extraordinary heritage - since May we have made discreet inquiries with government officials to determine whether and when Woodmere may receive the good news that it, too, will have its SAT grant restored.

24.     Woodmere has explored all reasonable, non-litigious means to have its grant restored. But at this point, with the grant project in jeopardy due to the pause in its funds, the expiration of IMLS's reauthorization only through September 30, 2025, and a serious need to complete its project in time to exhibit its nationally significant collection during the America 250 event, Woodmere has no choice but to take this action seeking relief for actions by Defendants that we believe to be unlawful.

25.     I believe that the combined effect of the IMLS's termination of Woodmere's grant, the OMB's directive to reject further funding requests, the imminent elimination of IMLS on September 30, 2025, the failure of IMLS to respond to Woodmere's requests for reconsideration of its grant termination, and the arbitrary and irrational refusal to reinstate Woodmere's grant while reinstating grants for similarly situated local museums, despite its intention to use its SAT grant in furtherance of the President's agenda, presents an imminent threat that Woodmere will suffer irreparable harm.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on August 26, 2025

_William R. Valerio_

_____

WILLIAM VALERIO, Ph.D.

# Exhibit A



**To:** Laura Heemer <lheemer@woodmereartmuseum.org>, William Valerio
<wvalerio@woodmereartmuseum.org>, Lily Williams
<lwilliams@woodmereartmuseum.org>, grantsadmin@imls.gov
**CC:**
**Sent by:** Mark Feitl <mfeitl@imls.gov>
**Subject:** IMLS Save America's Treasures Application ST-256887-OMS-24

**Body:**

September 10, 2024

Congratulations! It gives us great pleasure to notify you that your organization has
been selected to receive an Institute of Museum and Library Services (IMLS) FY2024
Save America's Treasures award for application ST-256887-OMS-24.

You may access your award letter, Official Award Notification for Grants and
Cooperative Agreements, approved budget, reporting schedule, guidance on how to
manage your IMLS award, and other related documents through eGMS Reach, IMLS's
online electronic grants management system.

In order to access eGMS Reach, you must first have a Login.gov account. Login.gov is a
secure sign-in service used to access certain participating government agencies' sites
and systems. Your Login.gov account must be associated with a unique-to-you email
address that matches the primary email address you will use to access eGMS Reach.

Please go to eGMS Reach at https://reach.imls.gov/ to sign in. If you are new to eGMS
Reach, choose a prompt on the login page to:

Log in using your existing Login.gov account that is associated with your eGMS Reach
primary email address;
Add your eGMS Reach primary email address to your existing Login.gov account that is
associated with a different email address; or
Create a new Login.gov account.

If you are a current eGMS Reach user, you may access your account for information
about this award using your existing Login.gov sign-in information.

If you are receiving this notification, it is because you were listed as the Project
Director, Grant Administrator, or Authorizing Official on the SF-424S submitted with
your application. If you need to update the individuals serving in these roles, or add
additional people that you wish to have access to the award in eGMS Reach, you must
submit a personnel change request in eGMS Reach. For complete instructions, see How

to Submit a Change Request in eGMS Reach.

If you need assistance accessing eGMS Reach, please contact the Help Desk at reach-helpdesk@imls.gov.

# Exhibit B

# Official Award Notification for Grants and Cooperative Agreements
## Institute of Museum and Library Services

| | | |
|---|---|---|
| **Action Taken:** Award | **Date of Action:** 9/10/2024 | **Award Date:** 9/10/2024 |

**FEDERAL AWARD INFORMATION**

| | |
|---|---|
| Federal Award ID Number (FAIN) | ST-256887-OMS-24 |
| Award Recipient | Woodmere Art Museum, Inc. |
| Award Recipient Unique Entity Identifier | FDRSMBJVMMN9                    TIN: 231381459 |
| Award Period | 10/1/2024 - 9/30/2026 |
| Budget Period | 10/1/2024 - 9/30/2026 |
| Assistance Listing Number/Title | 15.929 Save America's Treasures |
| Does the award support research and development? | No |
| Project Title | Preservation, Care, and Rehousing of Woodmere Art Museum's Collection |
| Project Description | The Woodmere Art Museum will carry out a project to stabilize and conserve significant works in their collection by Philadelphia artists. The Woodmere's collection, ranging from the 18th century to the present, is dedicated to telling the story of Philadelphia's art and artists from generation to generation. The project will establish and configure new storage spaces to relieve collection overcrowding as well as implement updated art storage practices. Staff will update the cataloguing system and move, catalogue, and digitize works in the collection. As a result of the project, works by Philadelphia artists will be more available for use in exhibitions as well as for public research purposes. |
| Grant Program and Office | Save America's Treasures, Office of Museum Services |
| Agency Level Goals and Objectives | Goal 3: Advance Collections Stewardship and Access<br>Objective 3.1: Support collections care and management |
| Performance Measures | **Effectiveness:** The extent to which activities contribute to achieving the intended results.<br>**Efficiency:** How well resources are used while generating maximum value for the target group.<br>**Quality:** How well the activities meet the requirements and expectations of the target group.<br>**Timeliness:** The extent to which each task/activity is completed within the proposed timeframe. |

**AWARD AMOUNTS**

| | |
|---|---|
| Funds Obligated by this Action | $750,000.00 |
| Total Outright Award Amount | $750,000.00 |
| Total Cost Share | $1,445,152.00 |
| Total Project Costs | $2,195,152.00 |
| Indirect Cost Rate | 0.00% |

**RECIPIENT CONTACTS**

| Role | Name | Affiliation |
|---|---|---|
| Authorizing Official | Dr. William Valerio(WValerio)<br>wvalerio@woodmereartmuseum.org | Patricia Van Burgh Allison Director and CEO<br>Woodmere Art Museum, Inc. |
| Grant Administrator | Ms. Lily Williams(LilyWilliams)<br>lwilliams@woodmereartmuseum.org | Director of Development<br>Woodmere Art Museum, Inc. |
| Project Director | Ms. Laura Heemer(LHeemer)<br>lheemer@woodmereartmuseum.org | Registrar<br>Woodmere Art Museum, Inc. |

**REMARKS**

1. The Institute of Museum and Library Services (IMLS) provides this grant support pursuant to 20 U.S.C. § 9101 et seq.

2. The administration of this award and the expenditure of award funds are subject to the General Terms and Conditions for IMLS Discretionary Grant and Cooperative Agreement Awards as modified or supplemented by any special terms and conditions incorporated into this award. The General Terms and Conditions for IMLS Discretionary Grant and Cooperative Agreement Awards incorporate by reference the uniform administrative requirements, cost

# Official Award Notification for Grants and Cooperative Agreements
## Institute of Museum and Library Services

principles, and audit requirements for federal awards promulgated by the Office of Management and Budget.

3. The award is made in support of the purposes set forth in the application or, if noted in the special terms and conditions of the award, in a revised plan of work that has been approved by IMLS program staff.

4. The project supported by this award aligns with the specific agency-level goals and associated objectives and with grant program goals identified in the application.

5. SIGNAGE: As an IMLS awardee, you must erect and maintain a project sign in an area visible to the public. This sign must be maintained in place throughout the project term. At a minimum, the sign must contain the following statement: "Conservation of the [insert collection(s) name] is being supported in part by a Federal Save America's Treasures grant administered by the Institute of Museum and Library Services." Additional information briefly identifying the historical significance of the collection(s) or recognizing other contributors is encouraged and permissible. The cost of fabricating and erecting this sign is an eligible cost under this award agreement. NPS does not require that the Save America's Treasures logo be used on the project sign.

6. PERFORMANCE REPORTS: As an IMLS awardee, you must submit annual performance reports and must include several images showing the condition of the collection prior to beginning project work. Successive interim reports must include images of the work being performed. The final report must include several images showing the finished work. We prefer that images be digital and of a resolution and size appropriate for online and in-print publication.

**AWARDING OFFICIAL**

Laura Huerta Migus
Deputy Director, Office of Museum Services

# Exhibit C

# 2023 Save America's Treasures
# Comments on Grant Application

| GrantGovID | GRANT14035920 |
|---|---|
| Project Title | Preservation, Care, and Rehousing of Woodmere Art Museum's Collection |
| Legal Name | Woodmere Art Museum, Inc. |

| Reviewer ID | National Significance |
|---|---|
| 503 | -focus on the Philadelphia's rich artistic legacy from the 18th century to the present. Collection of over 10,000 works. -of note is the collection's representation of Philadelphia's Black artists and their contributions to American art/culture. -Collection's connection to Philadelphia as a World Heritage Site |
| 502 | Phildelphia is one of our oldest cities, so it stands to reason that this museum would house many significant works representing crticial events in our nation's history. |
| 559 | The Woodmere Art Museum's Collection reflect a rich history of Philadelphia from its early moments as the Nation's first capital until now. It collections contain colonial printing, important Revolutionary era painters, Philadelphia Black artists, and early to modern metalsmith and jewelry works. It is diverse in terms of the communities and artist represented and the scope of work collected. |
| 544 | There is a lot of context given about Philadelphia but no information is provided about the collection's current and past use or potential future use - who is your audience? The size and nature of the materials in need of preservation are not specified, other than "holdings include important paintings, drawings, and sculpture." |
| 561 | The applicant made a convincing case for the national significance of the collections in its care. |

| Reviewer ID | Severity of Threat to Property/Collection |
|---|---|
| 503 | Current storage facility is now insufficient for the collection's size, leading to dense packing of artworks, inadequate conditions for conservation, and difficulty in accessing and managing the collection. This situation has been highlighted in the museum's recent reaccreditation report and identified as needing urgent remedy. -A lack of space for human maneuvering and proper organization further exacerbates the risk of damage to the artworks. This is clearly evident in images. -Conservation needs are pressing, with numerous artworks requiring stabilization, deacidification, and repair to make them exhibition-ready. |
| 502 | A recent accreditation report from AAM noted their crowded storage, which puts this collection in danger, and other assessments have noted similar concerns. In addition to the lack of storage, the museum has works that are in need of conservation, and much organization work is required. |

| | |
|---|---|
| 559 | The collection risk is due to exceedingly cramped storage conditions, and the inability to maneuver in the space, store collections in suitable enclosures or provide the cataloging or conservation treatment that this important collection needs. |
| 544 | Threat is severe. Woodmere reports that the accrediting body Association Alliance of Museums requires correction of their storage methods. Paintings are stacked in cardboard bins and archival boxes have no interleaving. The images provided appear hazardous to staff. |
| 561 | This case was made in numerous ways by describing the inadequate storage conditions for the art and archives in detail, and showing the conditions with compelling photography. |

| Reviewer ID | How Effectively the Project Mitigates the Threat |
|---|---|
| 503 | -Acquisition of the Frances M. Maguire Hall for Art and Education seems key, enabling the relocation and salon-style display of paintings, significantly reducing overcrowding and handling. -Dedicated, purpose-built storage area on FMMH's third floor will house works on paper and archives, providing improved conditions for preservation and accessibility. -Specialized storage and display solutions are also planned for Woodmere's unique jewelry collection, ensuring specific climate control and security. -New personell to be hired to execute conservation work |
| 502 | Tasks are described clearly and should lead to the execution of a successful project. Perhaps the most impactful result will be that works will be more readily available to the public once this project is finished. This project as outlined does appear to be the next step in protecting the collection and a positive response to their previous assessments. The additional storage they are seeking should help with the overcrowding problem, and I would guess the hired archivist will help maintain the organization of the collection moving forward? |
| 559 | The grant applicants have a comprehensive plan to address collection needs. |
| 544 | Woodmere states a 3-pronged approach: 1) creating storage 2) conservation of items 3) documenting/digitizing the collection for access While this approach will mitigate the current threats, it is an extremely large undertaking. The linear feet of the archive is not provided and there is no detail about the the archival processing, description, and digitization portion. What tools will you use for digitization? Or are you hoping the finding aid will be the final discovery & access product? I don't see a budget line item for hosting these online. |
| 561 | I have a few quibbles regarding the budget submitted. The 20% of the Director and Deputy Director's time on this project seems unrealistic. The impact is that it seems to inflate the cost share contribution of the applicant, although the museum exceeds its cost share amount considerably, I would encourage that the budget be revised. In addition, I think the archivist's salary is too low for the responsibilities envisioned. I assume the applicant is using salaries at other Phila repositories as a guide, but I would encourage the grantor to require an increase to this for a more realistic base "living wage". |

| Reviewer ID | Feasibility |
|---|---|

| | |
|---|---|
| 503 | -adherence to American Alliance of Museums (AAM) standards -collaborative relationships with peer institutions -qualified personnel |
| 502 | While the resumes submitted show that staff is experienced, it looks like two staff positions critical to this project are vacant. Given the expertise of current staff, I would guess that the museum is capable of attracting similarly talented additional staff, though some details about qualifications they are seeking for these roles would have been helpful. Timeline and budget make sense. |
| 559 | The gant chart is a reasonable representation of steps and timeline necessary to address the collection needs. The project is feasible as written. |
| 544 | Woodmere states that the renovation of FMMH is incomplete and won't be ready for several months after the grant period has begun. Additionally, hiring for the project archivist has not begun - who is vital to the success of this proposal. The "documenting/digitizing the collection" portion of this proposal needs to be built out substantially or should be scoped into a different project entirely. No details are provided for the archival processing, description, digitization, image processing, server space, or digital access point or discovery layer. I could see this grant being retooled to just focus on the creating physical storage & conservation of items - a scaled down version may be more successful. |
| 561 | This is a well thought out application and project that takes into consideration the complexity of the range and type of activities to be undertaken over 2 years time. |

| Reviewer ID | Department of the Interior Priorities |
|---|---|
| 503 | |
| 502 | |
| 559 | |
| 544 | |
| 561 | |

| Reviewer ID | Additional Comments |
|---|---|
| 503 | |
| 502 | |
| 559 | |
| 544 | |
| 561 | I recommend funding this project with the budget adjustments suggested. |

If you have further questions please contact NPS at 202-354-2020 or preservation_grants_info@nps.gov.

# Project Description Worksheet

The Merit Review Criteria and detailed instructions for this worksheet are provided in the application instructions, also known as the Notice of Funding Opportunity (NOFO), found in the Related Documents tab of the Grants.gov grant opportunity. The Merit Review Criteria are in **Section E1. Criteria**, and the detailed instructions are in **Section D2. Content and Form of Application Submission**.

1. Historic Resource (Site or Collection) Name:

   Woodmere Art Museum (Collection)

2. Historic Resource Address:

   | | |
   |---|---|
   | Street Line 1 | Woodmere Art Museum |
   | Street Line 2 | 9201 Germantown Avenue |
   | City | Philadelphia |
   | County | Philadelphia |

   State PA

   Zip Code or Postal Code: 19118-2618

3. Does the Applicant own the historic resource?    Yes ⦿    No ◯

4. Type of Applicant:

   Non-Profit Organization

5. Grant Program applying for:

   Save America's Treasures, Collections

6. Type of Project:

   Physical Preservation

7. Federal Share Requested: $ 750,000.00

   Applicant Share to Commit: $ 1,445,153.00

   Total: $ 2,195,153.00

8. National Register Information System Number (NRIS), if applicable:

9. Applicant has received a previous Save America's Treasures grant:

   Yes ◯    No ⦿

## Table of Contents

| | |
|---|---|
| Criterion 1 Response | pg. 2 |
| Criterion 2 Response | pg. 3 |
| Criterion 3 Response | pg. 4 |
| Criterion 4 Response | pg. 5 |
| Project Timeline | pg. 6 |

**Criterion 1 Response**      Limit 6,000 characters (including spaces)

Woodmere Art Museum is dedicated to the art of Philadelphia from the 18th c. to the present. Founded in 1898 by Chas. K. Smith, a leading public voice in Lincoln-era/post-Civil War Philadelphia, Woodmere is housed in his grand Chestnut Hill mansion. Our collection, formed around art he acquired, now comprises 10K+ works and is an asset of great national significance. Woodmere is the only museum dedicated to telling the story of Philadelphia's art and artists and has evolved continuously from generation to generation, contributing substantially to any understanding of the development of America's national identity.

Philadelphia was the 1st US capitol with its 1st cultural institutions (art schools, museums of art/science, etc.). It was also a leading industrial city from the 19th c. to WWI. With a history of newspapers and printing culture going back to the time of Benj. Franklin, Philadelphia is the city that created American illustration. Founded on Quaker values of respect and tolerance, Philadelphia became a major destination on the Underground Railroad and Great Migration. As a result, Woodmere's collection is unique in its representation of Philadelphia's Black artists and the many firsts they contributed to American culture.

Philadelphia today is a city that welcomes immigrants, and Woodmere's collection of contemporary art is a tapestry of diverse international artists who made Philadelphia their home and whose voices tell the story of world cultures coming together. As a city where history has always been seen and felt on every corner, it's had an oversized impact on Philadelphia's art, for which it became America's 1st World Heritage City. This unique configuration of US culture is represented more extensively at Woodmere than at any other art museum.

Our collection is rich with works by Revolutionary-era artists: Benj. West, the Peales (Charles Wilson, Rembrandt, Jas., Sarah Miriam, and Harriet Caney), Thos. Sully, and Gilbert Stuart (incl. several portraits of Geo. Washington). The building of America and exploration of the US West is represented in an extensive collection of 19th-c. landscape paintings (many documenting newly formed National Parks) by Frederick Church, Jas. Hamilton, Thos. Moran, Hermann Herzog, Jasper Cropsey, Wm. Trost Richards, Edmund Darch Lewis, the Webers, etc.

In sculpture, Woodmere holds the preeminent version of Hiram Powers' *America*, a famous vision of America as a pure ideal worthy of veneration and protection from threat of secession. Among our greatest treasures is 1 of 5 great busts of Abraham Lincoln sculpted from life by Sarah Fisher Ames (another is on view in the US Capitol).

We are also distinguished for stewarding Violet Oakley's legacy, with 2K+

**Criterion 2 Response**      Limit 6,000 characters (including spaces)

The most pressing threat to Woodmere's collection is an over-saturated, over-crowded storage vault holding our 10K-object collection of paintings, works on paper, sculpture, archives, and other objects in a 3K sq.ft. storage space. To provide some background, Woodmere's historic mansion is now our main building of approximately 19K sq.ft, of which 12K sq.ft. were built for residential purposes in the 1850s. About half of the original Victorian-scaled parlors and bedrooms are used for rotating installations of the collection, while the other half are used for offices and education spaces. Approx. 4K sq.ft. was built in 1910 as a grand gallery space for special exhibitions. In the 1980s, the 3K sq.ft. storage facility was added, before which the collection was stored in a carriage house lacking climate control of any sort. In 2021, Woodmere acquired a near-adjacent 17K sq.ft. building, now named the Frances M. Maguire Hall for Art and Education (FMMH) which is being transformed into 14 public galleries incorporating the storage solutions discussed below. With FMMH's galleries focusing on Modern and Contemporary art, Woodmere's main building will be free to showcase our collection of 18th- and 19th-c. art, much currently in inadequate storage.

With extreme crowding and vastly sub-optimal conditions, Woodmere's works in storage are at risk by the very nature of the space that is meant to protect them. This was reported and noted as a concern in Woodmere's recent reaccreditation report from the Association Alliance of Museums as a matter requiring remedy: "Storage areas are packed tightly and hard to access. This makes it difficult for staff to physically reach and visually inspect many objects in the main storage area; we Peer Reviewers could only peek into the storage area due to congestion. Some of this overcrowding will be alleviated by the projected expansion into Maguire Hall [FMMH]." HSP's 2016 archives survey/condition assessment noted the need for improvements in organization/housing and conditions.

In 2017, Woodmere undertook a storage-benchmarking study as part of a Long-Range Plan. Independent consulting firm TDC Consulting noted that other US museums with collections of Woodmere's size generally have 3x our storage, with separate spaces dedicated to works on paper and other special collections. Although the storage space was built with 30 painting racks, about 60% of paintings are densely stacked in cardboard bins with

**Criterion 3 Response**    Limit 6,000 characters (including spaces)

Woodmere's collection care solution has 3 parts: creating appropriate storage to alleviate stress on objects and store them in ways that contribute to their preservation and allow accessibility; treating individual objects in need of conservation; documenting/digitizing the collection in ways that provide better access to staff/researchers/the public.

STORAGE
The 1st step in addressing the issue of appropriate storage has begun with the acquisition of FMMH. The next is to install as many paintings as possible salon-style in FMMH's galleries, hearkening back to the building's historical style of art display. This dense hanging plan will alleviate overcrowding in our current storage vault and mitigate the risk to work posed by over-handling. Decreasing the number of paintings in our current storage opens the opportunity for better organization and doubles capacity for shelves meaning better overall care for works.

Alongside the salon display of paintings, the largest objects in the collection - a 13-part series of murals by Violet Oakley  - will be installed in a purpose-built gallery created to house them in the dome-like configuration she envisioned. This also protects the works, dramatically reducing the amount they're handled.

Step 3 is to move works on paper (prints/drawings/photographs) and archives into a new dedicated, purpose-built storage area/study center (w/4 types of storage) on the 1,366 sq.ft. 3rd floor of FMMH. Walls are being removed to create an open space to be lined with archival-grade flat files, worktables, shelving, and other storage for works on paper. This will alleviate the overcrowding of our current and aging flat files, allowing us to spread out the collection and relieve pressure on works stored in overcrowded drawers and boxes. It will also allow us to move a large collection of drawings out of another building on campus not designed to hold art. By moving the works on paper collection into specialized space, we create additional capacity in our current storage. Staff will no longer have to squeeze between boxes or completely empty the vault to access artwork. A separate archive room with appropriate metal shelving will provide storage for/access to this important collection for scholarly research. In addition to flat files, we'll have shelves

**Criterion 4 Response**      Limit 6,000 characters (including spaces)

TIMELINE

Before undertaking this project, Woodmere's renovation of FMMH must be completed. This construction endeavor is on budget, fully funded, and on schedule for completion by November 2024. Project management is provided by Aegis Property Group, considered the leading architectural project manager museum construction in Philadelphia; Aegis is also managing the construction of the Calder Museum and recently completed the Philadelphia Museum of Art expansion. During the renovation period and up to the award date, Woodmere's curatorial staff will undertake research, and plan and organize the project, so that it can commence immediately should we be awarded funding.

Woodmere works on a regular basis with the various painting and object conservators and is familiar with many who possess the expertise needed for types of art identified in this project. This cohort of conservators have agreed to reserve time for Woodmere's project and we all concur the project as described can be completed within a 2-year timeframe.

COSTS

Costs are allowable, reasonable, and necessary. With oversight by the Board of Trustees' Finance Committee, it is Woodmere's policy to obtain 3 estimates for every activity with an expense of+ $5K ensuring bids are competitive and reasonable. All costs falling under the purview of the grant are directly tied to the activities of conserving, properly storing, and making accessible Woodmere's collection.

Additional oversight is provided by Woodmere's Collections Management Committee, which reports to the Board of Trustees and is charged with overseeing curatorial staff and collection-related activities. The approx. 20 committee members include artists, art collectors, museum professionals with experience working at other institutions, and conservators. The

**Project Timeline**        Limit 6,000 characters (including spaces)

SEPTEMBER THROUGH DECEMBER 2024
- Orders placed for flatfiles, shelving, other furniture, and supplies
- Job posted for Project Archivist

SEPTEMBER 2024 THROUGH MARCH 2025
- Measurements and architectural specifications for custom casework
- Conservation assessments begin (objects, paintings & works on paper)
- Preservation supplies for works on paper & jewelry collections ordered
- Archivist hired and begins planning

SEPTEMBER 2024 THROUGH MARCH 2026
- Conservation of art underway

JANUARY THROUGH JUNE 2025
- Archivist surveys archives, plans, and organizes for move
- Preservation/cataloguing supplies ordered for the archive collection
- Custom casework built/installed (jewelry galleries & works on paper study center)
- Paintings, objects, framed works on paper installed in Maguire Hall
- Conservation work on paintings & objects completed
- Jewelry exhibitions installed in new casework
- Maguire Hall opens to the public

APRIL THROUGH JANUARY 2025
- Preparation to move works on paper begins (logistical planning, home locations assigned, drawers & shelves labeled)
- Flatfiles, shelving installed
- Jewelry Collection storage prepared & organized in Jewelry Vault
- Collections database updated with home locations for Jewelry Collection
- Works on paper move to new storage locations in Maguire Hall
- Collections database updated with missing information & new home locations
- Archives processed & relocated to new storage location at Maguire Hall

JANUARY THROUGH JUNE 2026
- Creation of Archival Finding Aid
- Move of archival collection into new dedicated archival space completed
- Conservation of works on paper completed

APRIL THROUGH AUGUST 2026
- Works on paper collection relocation to Maguire Hall completed
- Study Center for Works on Paper opens to researchers
- Archives opens to researchers

# Exhibit D



**INSTITUTE OF MUSEUM AND LIBRARY SERVICES**

**NOTICE OF GRANT TERMINATION**

April 8, 2025

Laura Heemer, Lily Williams, William Valerio

lheemer@woodmereartmuseum.org, lwilliams@woodmereartmuseum.org, wvalerio@woodmereartmuseum.org

Dear IMLS Grantee,

This letter provides notice that the Institute of Museum and Library Services (IMLS) is terminating your federal grant (Grant Application No. ST-256887-OMS-24) effective April 8, 2025, in accordance with the termination clause in your Award Agreement.

Upon further review, IMLS has determined that your grant is unfortunately no longer consistent with the agency's priorities and no longer serves the interest of the United States and the IMLS Program. IMLS is repurposing its funding allocations in a new direction in furtherance of the President's agenda. Independently and secondly, the President's March 14, 2025 executive order mandates that the IMLS eliminate all non-statutorily required activities and functions. *See Continuing the Reduction of the Federal Bureaucracy*, E.O. 14238 (Mar. 14, 2025). Therefore, the IMLS hereby terminates your grant in its entirety effective April 8, 2025.

Please remember that your obligations under the Grant Agreement continue to apply. An audit may be conducted by IMLS after the termination of the agreement.

Please contact grant-notices@imls.gov with only urgent questions. We wish you well.

Sincerely,

/s/ Keith Sonderling

Keith Sonderling

Acting Director

ksonderling@imls.gov

955 L'Enfant Plaza SW #4000, Washington, DC 20024

# Exhibit E

# WOODMERE

May 8, 2025

Keith Sonderling
Acting Director
Institute of Museum and Library Services
955 L'Enfant Plaza SW#4000
Washington, DC 20024

Dear Mr. Sonderling:

In accordance with Section 30 of IMLS's grant terms and conditions, Woodmere Art Museum requests a review of the termination of its Save America's Treasures grant (Grant Application No. ST-256887-OMS-24) made on April 8, 2025. We believe the grant project remains consistent with the agency's priorities and continues to serve the interest of the United States and the IMLS Program. Specifically, this grant supports the care, preservation, and storage of one of the country's great collections of American art. As Program reviewers noted, Woodmere's collection reflects the "rich history of Philadelphia from its early moments as the Nation's first capital until now."

In preparation for the opening of a new building this fall, many works of art need immediate conservation and restoration to be displayed, and the loss of this grant deals a devastating blow to our ability to provide proper collection care. Furthermore, this grant would fund the conservation of works to be displayed as part of our America 250 exhibition in 2026. As the Cradle of Liberty, Philadelphia will attract countless visitors to celebrate America's Semiquincentennial. This grant is critical to Woodmere's ability to share with visitors from across the country and around the world the story of artists living and working in America's birthplace.

Finally, we believe that the IMLS should reinstate the Woodmere's September 2024 grant of $750,000 on the legal basis cited below:

On May 6, 2025, Chief Judge John J. McConnell, Jr., in the matter encaptioned State of Rhode Island, et al v. Donald J. Trump, et al, Case No. 1:25-cv-00128-MMM-LDA (hereafter "the Action"), entered a Memorandum and Order holding that Executive Order No. 14238 "violates

# WOODMERE

the Administrative Procedures Act ("APA") in the arbitrary and capricious way it was carried out. It also disregards the fundamental constitutional role of each of the branches of our federal government; specifically, it ignores the unshakable principles that Congress makes the law and appropriates funds, and the Executive implements the law Congress enacted and spends the funds Congress appropriated." (Memorandum and Order at pg 1). The Court's Memorandum and Order applies to three federal agencies, one of which is the Institute of Museum and Library Services ("IMLS"). (Memorandum and Opinion at pg 1-2). Persons bound by this Memorandum and Order include the parties before the Court (one of which is the IMLS), the parties' officers, agents, servants, employees or attorneys, and other persons, who are in active concert or participation with anyone described in FedRCiv.P.65(d)(2)(A) or (B).

Woodmere, therefore, respectfully requests that its September 2024 Grant of $750,000 be restored in full, less money expended on or before April 8, 2025, which monies have been or will be reimbursed independent of the foregoing Preliminary Injunction.

The goal of this project is to preserve one of the country's great collections of American art and make it accessible to all those interested in America's national patrimony and Philadelphia's contribution to the development of our nation. We strongly believe that Woodmere's Save America's Treasures grant project remains in keeping with the funding priorities of the IMLS and Federal Government and continues to serve the interest of the United States and the IMLS Program. We, therefore, ask that you reconsider the termination of Woodmere's grant. Thank you for your consideration of this request.

Sincerely,

*Bill Valerio*

William Valerio
The Patricia Van Burgh Allison Director and CEO

**Lily Williams**

Director of Development



lwilliams@woodmereartmuseum.org

office: 267.691.0263, cell: 215.370.6998

woodmereartmuseum.org

9201 Germantown Ave

Philadelphia, PA 19118

---

**From:** Lily Williams
**Sent:** Friday, May 9, 2025 6:58 PM
**To:** grantsadmin@imls.gov <grantsadmin@imls.gov>
**Cc:** Bill Valerio <wvalerio@woodmereartmuseum.org>
**Subject:** Grant # ST-256887-OMS-24 Termination Review

To Whom it May Concern,

Woodmere Art Museum is requesting a review of the decision to terminate its Save America's Treasures grant #ST-256887-OMS-24. Please see the attached letter from Woodmere's Director William Valerio to IMLS Acting Director Keith Sonderling. We believe our grant remains consistent with the agency's updated priorities and continues to serve the interest of the United States and the IMLS Program.

Thank you for your consideration of our request.

Respectfully yours,



lwilliams@woodmereartmuseum.org

office: 267.691.0263, cell: 215.370.6998

woodmereartmuseum.org

9201 Germantown Ave

Philadelphia, PA 19118

---

**From:** Lily Williams <lwilliams@woodmereartmuseum.org>
**Sent:** Thursday, July 17, 2025 2:44 PM
**To:** grantsadmin@imls.gov <grantsadmin@imls.gov>
**Cc:** Bill Valerio <wvalerio@woodmereartmuseum.org>; Stephanie Cehelsky <scehelsky@woodmereartmuseum.org>
**Subject:** Fw: Grant # ST-256887-OMS-24 Termination Review

To Whom It May Concern,

On May 9, 2025, Woodmere submitted a formal request for review of its Save America's Treasures grant termination. We received confirmation of the agency's receipt of our request on May 19, 2025. Could you please update us as to where you are in the review process? We sincerely believe that our grant remains consistent with IMLS's updated priorities and should be reinstated. With the opening of our new building this fall and Woodmere's participation in America's 250th celebration in 2026, this funding is essential. We would be very grateful for your consideration.

Thank you so much,

Lily

**From:** Lily Williams <lwilliams@woodmereartmuseum.org>
**Sent:** Thursday, August 7, 2025 7:30 PM
**To:** grantsadmin@imls.gov <grantsadmin@imls.gov>
**Cc:** Bill Valerio <wvalerio@woodmereartmuseum.org>; Dan Muroff <dan@missiongr.com>
**Subject:** Time Sensitive: Fw: Grant # ST-256887-OMS-24 Termination Review

Hello,

Could you please let me know the status of Woodmere Art Museum's Grant Termination Review (Grant # ST-256887-OMS-24)?

IMLS instructions cited a right to appeal, which we have requested in accordance with the Agency's guidelines. We have time-sensitive internal decisions to make that are predicated on the Agency's response. It would be helpful to know if the review has yet been conducted and, if not, when it will occur and when we can expect notification of the decision.

Regards,

Lily

**Lily Williams**

Director of Development

Lily Williams

**Lily Williams**

**Director of Development**







office: 267.691.0263, cell: 215.370.6998

woodmereartmuseum.org

9201 Germantown Ave

Philadelphia, PA 19118

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Verified Complaint was served to David Metcalf, Esquire, United States Attorney for the Eastern District of Pennsylvania, as local attorney for all defendants, *via electronic mail* at usapae.usattorney@usdoj.gov, on the 26th day of August 2025.

/s/ John P. McShea
John P. McShea
Eastburn and Gray, P.C.

*Attorney for Plaintiff*
*Woodmere Art Museum, Inc.*